UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAMBE JOHNSON,

       Plaintiff,                        Hon. Ellen S. Carmody

v.                                      Case No. 1:12-CV-78

MEIJER, INC.,

       Defendant.

_____/

## OPINION

This matter is before the Court on Defendant's Motion to Strike Plaintiff's Expert and for Summary Judgment. (Dkt. #27). On February 23, 2012, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #10). For the reasons articulated below, Defendant's motion is **granted** and Plaintiff's action **dismissed**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1, Exhibit 1). On August 6, 2010, Plaintiff was shopping at a Meijer store in Battle Creek, Michigan. (Dkt. #1, Exhibit 1 at ¶¶ 5-7). While "pushing a grocery cart," Plaintiff "made contact with" a wall-mounted fire extinguisher. (Dkt. #1, Exhibit 1 at ¶ 7). Because the fire extinguisher was "improperly secured," it "came loose" when contacted and "fell on" Plaintiff's right foot causing her to "suffer injuries." (Dkt. #1, Exhibit 1 at ¶ 7). Plaintiff alleges that Meijer's negligence was the cause of her injuries. (Dkt. #1,

Exhibit 1 at ¶¶ 7-17). Plaintiff initiated the present action against Meijer on December 22, 2011, in Calhoun County Circuit Court. (Dkt. #1, Exhibit 1). Defendant removed the matter to this Court on January 25, 2012.[1] (Dkt. #1).

At her subsequent deposition, Plaintiff further asserted the following. On the date in question, Plaintiff was accompanied by her daughter-in-law, Chrissen Johnson, and Johnson's infant daughter, Chevelle. (Dkt. #27, Exhibit 1 at 34). Upon arriving at Meijer, Plaintiff and Johnson transported Chevelle using their own child safety seat. (Dkt. #27, Exhibit 1 at 36-38). Plaintiff subsequently placed the child safety seat in a Meijer shopping cart. (Dkt. #27, Exhibit 1 at 36-37). Plaintiff is five feet, three and three-quarters inches tall. (Dkt. #27, Exhibit 1 at 39). Given Plaintiff's height, placing the child safety seat in the shopping cart obstructed Plaintiff's vision. (Dkt. #27, Exhibit 1 at 39). Plaintiff nevertheless opted to push the shopping cart throughout the store. (Dkt. #27, Exhibit 1 at 39-43). At one point, Plaintiff turned around to look at Johnson while simultaneously continuing to push the shopping cart through the store. (Dkt. #27, Exhibit 1 at 42-43). While Plaintiff was looking at Johnson, she pushed the shopping cart into the fire extinguisher. (Dkt. #27, Exhibit 1 at 42-43). Plaintiff conceded that the presence of the fire extinguisher was "obvious" and that had she been looking in the direction she was pushing her cart, she would have been able to see (and presumably avoid) the fire extinguisher in question. (Dkt. #27, Exhibit 1 at 50-52).

As part of her litigation of this matter, Plaintiff procured the services of a purported expert witness, Stuart Rothman. Defendant has moved for summary judgment on two separate grounds.

---

[1] The basis for removal to this Court was diversity jurisdiction, which appears appropriate. The parties are citizens of different sates and the amount in controversy requirement likewise appears to be satisfied given Plaintiff's pre-filing damage claim of more than one-hundred fifty-thousand dollars ($150,000.00). *See, e.g., Carver v. Phoenix Ins. Co.*, 2012 WL 1476064 at *2 (W.D.N.C., Apr. 24, 2012) ("absent some concession by Plaintiff that [the] demand letter was artificially inflated," such constitutes sufficient evidence to satisfy the jurisdictional amount in controversy requirement); *Bronick v. State Farm Mut. Auto Ins. Co.*, 2011 WL 5592898 at *3-4 (D. Ariz., Nov. 17, 2011) (same).

Defendant first asserts that because the fire extinguisher in question constituted an open and obvious risk, Meijer owed no duty to Plaintiff. Defendant next asserts that Plaintiff's expert witness, Stuart Rothman, is unqualified to offer opinion evidence. Defendant contends that even if it did owe a duty to Plaintiff, absent Rothman's opinion evidence, Plaintiff's claim fails because she cannot establish that Meijer breached its duty to Plaintiff. The Court held a hearing on Defendant's motion on January 15, 2013. The Honorable Joseph G. Scoville also conducted a settlement conference with the parties on March 7, 2013, which did not result in resolution of this matter. For the reasons articulated herein, Defendant's motion for summary judgment is granted and this action is terminated.

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Existence of Duty**

Plaintiff's alleges that Meijer acted negligently and that such caused her injury. Under Michigan law the elements of a negligence claim are: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *See, e.g., Hazelton v. C.F. Fick and Sons, Inc.*, 2012 WL 5290316 at *2 (Mich. Ct. App., Oct. 25, 2012). Defendant asserts that it is entitled to summary judgment on the ground that it did not owe a duty to Plaintiff to warn her of (or protect her from) the fire extinguisher in question.

The Michigan Supreme Court recently clarified the state of premises liability law in Michigan. In *Hoffner v. Lanctoe*, 821 N.W.2d 88 (Mich. 2012), the court observed that the general duty owed by an invitor to an invitee[2] is "to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Id.* at 94 (footnote omitted). Accordingly, liability is appropriate where the land owner knows or should know of a dangerous condition "of which the invitee is unaware" and fails to repair, guard against, or warn the invitee of such. *Hoffner*, 821 N.W.2d at 94.

However, in light of the "overriding public policy of encouraging people to take reasonable care for their own safety...[t]he possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* The court emphasized that the standard for determining whether a danger is open and obvious is an objective standard: "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 821 N.W.2d at 94-95.

The conclusion that a danger is "open and obvious" does not terminate the analysis, however, because certain open and obvious hazards are so unreasonably dangerous that the law imposes a duty to "take reasonable steps to protect an invitee from that *unreasonable* risk of harm." *Id.* at 95 (emphasis in original). This exception to the open and obvious doctrine is referred to as the "special aspects" exception. As the *Hoffner* court made clear, however, the special aspects exception is narrow and applies in only two circumstances: (1) where a danger, although open and obvious, is "unreasonably

---

[2] An invitee is defined as "[a] person who has an express or implied invitation to enter or use another's premises, such as a business visitor or a member of the public to whom the premises are held open." Black's Law Dictionary (9th ed. 2009).

dangerous," and (2) where a danger, although open and obvious, is "effectively unavoidable." *Hoffner*, 821 N.W.2d at 95-96. As the court observed, such dangers "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards." *Id.* at 96.

An example of an open and obvious danger that is "effectively unavoidable" would be presented in a circumstance in which the only public exit from a commercial building was "covered with standing water." *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 387 (Mich. 2001). An example of an open and obvious hazard that is unreasonably dangerous would be "an unguarded thirty foot deep pit in the middle of a parking lot." *Id.* As if to underscore, the incredibly limited scope of the special aspects exception, the *Hoffner* court concluded that the icy conditions obstructing the only entrance to a health club constituted an open and obvious danger, but was neither "unreasonably dangerous" nor "effectively unavoidable." *Hoffner*, 821 N.W.2d at 106.

In the context of a negligence action, whether a duty exists is generally a question of law to be resolved by the court. *Id.* at 103. Furthermore, "[b]ecause the issue of the openness and obviousness of a hazard is an 'integral part' of the question of duty, establishing whether a duty exists in light of the open and obvious nature of a hazard is an issue within the province of the court." *Hoffner*, 821 N.W.2d at 103. Only when an open and obvious hazard "is in some manner unreasonable" does there exist a question of fact requiring submission to a jury. *Id., see also Jimkoski v. Shupe*, 763 N.W.2d 1, 6-7 (Mich. Ct. App. 2008) (summary judgment inappropriate given existence of genuine factual dispute as to whether improperly stacked, 700-pound hay bale was unreasonably dangerous).

In the present circumstance, Plaintiff has submitted no evidence from which a reasonable person could conclude that the hazard in question was unreasonably dangerous. In other words, Plaintiff

has failed to submit evidence sufficient to implicate either of the aforementioned special aspects exceptions. Plaintiff has submitted no evidence suggesting that she was "required or compelled to confront" the fire extinguisher in question and, therefore, cannot establish that the hazard in question was "effectively unavoidable." *Hoffner*, 821 N.W.2d at 99. Likewise, because an openly mounted fire extinguisher is a "common condition" such cannot be considered "unreasonably dangerous." *Id.* at 96 ("unreasonably dangerous" [hazards]. . .must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards").

In light of Plaintiff's failure to demonstrate the existence of a factual dispute on the question of whether the hazard in question was unreasonably dangerous, whether Defendant owed a duty to Plaintiff is a question for the Court to resolve. As previously noted, Plaintiff concedes that the fire extinguisher was "obvious" and that her vision was obstructed by the child seat she placed in her shopping cart. Finally, Plaintiff admitted that she struck the fire extinguisher with her shopping cart while she was looking away and that had she been looking in the direction she was pushing the cart, she would have been able to see (and presumably avoid) the fire extinguisher in question. Plaintiff's testimony constitutes strong evidence that "an average person with ordinary intelligence would have discovered [the fire extinguisher] upon casual inspection" which is the standard under Michigan law for whether an alleged hazard is open and obvious. *Hoffner*, 821 N.W.2d at 94-95. The Court concludes, therefore, that Defendant owed no duty to Plaintiff to warn her of (or protect her from) the presence of the fire extinguisher in question. This conclusion is consistent with the "overriding public policy [in Michigan] of encouraging people to take reasonable care for their own safety." *Id.* at 94.

The Court's conclusion is also informed by the resolution, by an Ohio court, of a factually indistinguishable circumstance. In *Ropp v. K-Mart Corp.*, 2001 WL 1497204 (Ohio Ct. App. Nov. 27,

2001), Ropp was shopping at a K-Mart store and "bent down to look at merchandise in a waist-high glass showcase." *Id.* at *1. When Ropp stood up, he "bumped" a fire extinguisher which then "fell off its mounting and landed on Ropp's foot." Ropp subsequently sued K-Mart alleging negligence. The trial court granted K-Mart's motion for summary judgment, a determination which Ropp appealed.

The court of appeals first observed that while K-Mart owed to its invitees the duty to maintain its premises in "a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger," K-Mart owed Ropp no duty to warn him of (or protect him from) "hazards which are so obvious and apparent that the invitee is reasonably expected to discover and protect against them himself." *Ropp*, 2001 WL 1497204 at *1.

Ropp conceded that the fire extinguisher was "mounted in plain view [and] readily discoverable upon ordinary inspection." *Id.* at *2. Ropp nevertheless asserted that summary judgment was inappropriate because the fire extinguisher was mounted "in such a way that the precarious and hazardous condition of the fire extinguisher was invisible." Ropp also argued that summary judgment was not appropriate because there existed evidence demonstrating that "the fire extinguisher may have fallen from its mounting in the past," thus raising a factual dispute as to whether the fire extinguisher "was sufficiently secured on its mounting." The court of appeals disagreed, concluding that "the danger posed by the fire extinguisher, including the risk that it could dislodge from its mounting and fall if bumped, was open and obvious." Accordingly, the court affirmed the grant of summary judgment on the ground that K-Mart "had no duty to warn of or prevent this hazard." *Ropp*, 2001 WL 1497204 at *2. While the *Ropp* decision is certainly not controlling, the Court finds its analysis persuasive and consistent with Michigan law, specifically the emphasis under Michigan law for invitees "to take

reasonable care for their own safety" as well as the narrow construction of the special aspects exception to the open and obvious doctrine.

For the reasons discussed herein, the Court concludes that the fire extinguisher in question, both its presence and the manner in which it was mounted, constituted an open and obvious condition which was neither unreasonably dangerous nor effectively unavoidable. As such, Plaintiff cannot establish that Defendant owed a duty to warn her of (or protect her from) the fire extinguisher in question. Accordingly, Defendant's motion for summary judgment is granted.[3]

**II.     Motion to Strike Expert**

Plaintiff retained Stuart Rothman to testify at trial as an expert witness. Rothman has also submitted an expert report and been deposed by Defendant. Rothman asserts in his expert report and deposition testimony that had Meijer used any number of different mountings to secure the fire extinguisher in question, it would not have been dislodged when struck by Plaintiff's shopping cart. Defendant moves to strike Rothman's report and testimony on the ground that Rothman is not properly qualified to offer opinion evidence. While Defendant asserts that it owed no duty to Plaintiff, Defendant argues that even if it did owe a duty to Plaintiff it is nevertheless entitled to summary judgment because, absent Rothman's opinion evidence, Plaintiff cannot establish that Meijer breached its duty to Plaintiff.

In federal diversity actions, state law governs substantive issues, while federal law governs issues of procedure. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Rules of evidence are generally considered procedural rules, therefore, the Federal Rule of Evidence apply in diversity actions.

---

[3] The Court also notes that the rule that a premises owner has no duty to warn of open and obvious dangers is not an affirmative defense under Michigan law. *See Shay v. 333 L.P., L.L.C.*, 2012 WL 833207 at *3 (Mich. Ct. App., Mar. 13, 2012). Accordingly, Defendant's motion for summary judgment is not subject to the more stringent standard applicable when a party moves for summary judgment as to an affirmative defense or a claim on which it bears the burden at trial.

*See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000). In particular, the admissibility of expert witness testimony is a matter of federal, rather than state, law. *Brooks v. Am. Broad. Cos.*, 999 F.2d 167, 173 (6th Cir. 1993).

Federal Rule of Evidence 702 provides that a witness "who is qualified as an expert by knowledge, skill, expertise, training, or education" may offer opinion testimony if: (1) the witness' "scientific, technical, or other specialized knowledge" will assist the trier of fact to understand the evidence or to determine a fact in issue; (2) the witness' testimony is based on "sufficient facts or data;" (3) the witness' testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also*, *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008) (opinion evidence is admissible only if the witness is qualified and his opinion is both relevant and reliable). Should a witness not meet these qualifications, he will not be permitted to offer opinion evidence.

Rothman purports to offer evidence on the question whether the fire extinguisher in question was installed in a manner that violated the applicable standard of care. Given his experience as an architect who has participated in the design and construction of many commercial buildings, Rothman is arguably qualified to offer opinion evidence on this subject. However, because Rothman's opinions are not sufficiently reliable and, moreover, because his opinions are not relevant, he cannot be permitted to offer opinion evidence in this matter.

A. Reliability

To satisfy Rule 702's reliability standard, the proffered opinions must derive from "reasoning or methodology. . .[that] is scientifically valid. . .[and] properly can be applied to the facts

in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Stated differently, the opinions in question must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Id.* at 597. Moreover, an expert seeking to offer opinion evidence "must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011). A review of Rothman's deposition testimony makes clear that his proffered opinion falls far short of this standard.

Rothman did not visit or otherwise inspect the accident site. (Dkt. #27, Exhibit 3 at 15-16, 23-24). He did not inspect the fire extinguisher in question and, moreover, merely guessed at its weight. (Dkt. #27, Exhibit 3 at 38). Rothman did not know when the fire extinguisher in question was mounted or whether it was mounted in a manner inconsistent with any accompanying mounting instructions. (Dkt. #27, Exhibit 3 at 22-23). Rothman reported that he possessed no knowledge or evidence that the fire extinguisher was "improperly mounted" or "wasn't adequately secured to the post." (Dkt. #27, Exhibit 3 at 23-24).

Rothman reported that the mounting hardware in question was adequate to support the fire extinguisher and that the fire extinguisher was properly installed on the hardware. (Dkt. #27, Exhibit 3 at 35). Rothman testified that he had no knowledge or evidence that the mounting hardware was improperly or insufficiently installed. (Dkt. #27, Exhibit 3 at 34-35). Rothman reported that he had no knowledge or evidence that the mounting hardware failed when struck by Plaintiff's shopping cart. (Dkt. #27, Exhibit 3 at 34). Rothman did not perform any testing to determine "what type of impact [was] necessary to dislodge" a fire extinguisher from the type of mounting hardware in question. (Dkt. #27, Exhibit 3 at 37). Rothman further acknowledged that he possessed no knowledge regarding the circumstances surrounding the accident in question, such as the rate of speed at which Petitioner was

pushing her shopping cart or the manner in which her cart struck the fire extinguisher. (Dkt. #27, Exhibit 3 at 51-52).

As the preceding discussion makes clear, Rothman's purported opinions do not derive from any "reliable foundation" or valid reasoning or methodology. Rather, Rothman merely seeks to offer, in the guise of "expert" testimony, mere speculation and conjecture based upon insufficient investigation or analysis. Rothman's efforts in this matter demonstrate a complete absence of "intellectual rigor" rendering his proposed opinions fatally unreliable. To consider such speculative and unreliable evidence would be to ignore the instructions and guidance articulated by the Supreme Court in *Daubert* and subsequent cases.

B. Relevance

Rothman asserts that if the fire extinguisher in question had been properly mounted, it would not have dislodged when struck by Plaintiff's shopping cart. However, when asked whether this opinion was based on the results of any testing, investigation, or competent analysis, Rothman responded, "no, I'm just using common sense." (Dkt. #27, Exhibit 3 at 45).

To be relevant, a proffered expert's opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Implicit in this standard is that the trier of fact does not require the assistance of a purported expert where the issue in question is within the fact finder's common knowledge. *See, e.g., Rosenfeld v. Oceania Cruises, Inc.*, 682 F.3d 1320, 1331 (11th Cir. 2012) ("matters of common sense typically do not require or allow for expert testimony"); *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. Appx. 796, 803 (10th Cir., July 2, 2009) (same); *Jones v. Pramstaller*, 874 F.Supp.2d 713, 720 (W.D. Mich. 2012) (same); *Thompson v. Warren*, 2013 WL 249556 at *3 (E.D.

Mich., Jan. 23, 2013) (same). Whether a fire extinguisher was mounted in a negligent manner certainly seems to be within the ken of the average person, a conclusion with which Rothman appears to agree. Accordingly, the Court finds that Rothman's purported opinions are also precluded on the ground that such are irrelevant.

For the reasons discussed herein, the Court grants Defendant's motion to strike Stuart Rothman's testimony and evidence. Other than Rothman's testimony concerning breach of the standard of care, Plaintiff offers no other evidence as to this particular element of her negligence claim. Given that Plaintiff has been afforded ample opportunity to engage in discovery and present evidence in opposition to Defendant's motion for summary judgment, this complete absence of evidence is fatal to Plaintiff's claim and entitles Defendant to summary judgment. *See Morris*, 201 F.3d at 787 (summary judgment is appropriate where moving party demonstrates that the non-moving party cannot sustain her burden at trial as to a claim on which she bears the burden of proof).

In conclusion, the Court finds that Plaintiff cannot establish that Defendant owed a duty to warn her of (or protect her from) the alleged hazard in question. Defendant is entitled to summary judgment on this basis. The Court further concludes that Stuart Rothman's purported opinion evidence is inadmissible. This finding likewise results in the conclusion that Defendant is entitled to summary judgment as stated above. The two grounds on which Defendant is entitled to summary judgment represent alternative grounds for relief, either one of which is sufficient by itself to support such relief.

## CONCLUSION

For the reasons articulated herein, Defendant's Motion to Strike Plaintiff's Expert and for Summary Judgment, (dkt. #27), is **granted** and Plaintiff's action **dismissed**. An Order consistent with this Opinion will enter.


Date: April 2, 2013 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge